UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDON MOORE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-13644** |
| **S.W. "SANDY" MCCAIN, WARDEN** | **SECTION "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2) (2006)**.[1]

### I.   Factual and Procedural Background

The petitioner, Brandon Moore ("Moore"), is a convicted inmate incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[2] On January 9, 2014, Moore was charged by Bill of Information in Orleans Parish Case No. 518766 with one count of sexual battery upon H.J. and one count of aggravated incest upon H.J.[3] On April 24, 2014, Moore was charged by separate Bill of Information in Orleans Parish Case No. 520013 with indecent behavior with a juvenile, K.W.[4] He entered pleas of not guilty to the charges in both cases.[5]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.  This single challenge to two convictions in Orleans Parish is acceptable, because although separately numbered, they were addressed jointly.  *See* St. Rec. Vol. 1 of 2, Minute Entry, 520013, 5/12/14.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 518766, 1/9/14.

[4]St. Rec. Vol. 1 of 2, Bill of Information, 520013, 4/24/14.

[5]St. Rec. Vol. 1 of 2, Minute Entry, 518766, 2/25/14; Minute Entry, 520013, 7/6/14.

The record reflects that the allegations against Moore resulted in prosecutions in both Orleans Parish and Jefferson Parish. Although this case addressed only the Orleans convictions, the underlying facts were summarized in his appeal from the 2014 Jefferson Parish conviction.[6]

On September 20, 2005, Moore and J.J. were married.[7] By 2012, Moore and J.J. lived on East Hermes Street in New Orleans East with J.J.'s children, H.J. and B.M. In August of 2012, J.J. and Moore separated, and Moore went to live with Nadia Moore, his son's mother, in an apartment on Ute Drive on the Westbank of Jefferson Parish. At the end of August 2012, Hurricane Isaac struck the area, and Moore evacuated with H.J., B.M., Nadia, and Nadia's children to his mother's house in Texas. J.J. allowed Moore to take H.J. and B.M., and she stayed behind.

Moore, Nadia, and the children returned to New Orleans a few days later and stayed at Nadia's house. By early October, Moore and J.J.'s children moved back to East Hermes.

From August 2012 through February 2013, J.J. noticed that H.J. had become withdrawn and stayed in her room. H.J.'s grades dropped, and she changed her way of dress. In February, J.J. spoke with H.J. about sex and questioned whether she had become active. H.J. cried during the questioning. Moore also began acting strangely and pulled out a gun while J.J. and H.J. were talking. H.J. asked J.J. to take her for a ride; she wanted to talk to her mother but was afraid that Moore would do something. While away from the house, H.J. told J.J. the following information about Moore.

---

[6]Because Moore pleaded guilty to the Orleans Parish charges, the facts are taken from the appeal opinion from the Louisiana Fifth Circuit Court of Appeal. *State v. Moore*, 215 So.3d 951, 955-960 (La. App. 5th Cir. 2017). In Jefferson Parish, Moore was charged with forcible rape of H.J. and found guilty of the lesser offense of attempted forcible rape for the incident at Nadia's home. *Id.*, at 955, 960. He was sentenced to 15 years in prison. *Id.*, at 960.

[7]The Louisiana courts referred to the minor victims of sexual offenses and their families by their initials in accordance with La. Rev. Stat. Ann. § 46:1844(W)(3). This Court will do the same.

2

H.J., who was 12 and 13 years old when these events occurred, noticed before Hurricane Isaac that Moore was acting differently towards her.  At one time, unbeknownst to her, Moore watched her dancing in the computer room.  Afterwards, Moore told H.J. that she knew how to have sex and "work a penis" based on how she danced.  Shortly before Hurricane Isaac, H.J. and Moore spoke about her feelings for N.R., a 17-year-old boy who lived in Gretna.  Moore told H.J. that she "was ripe" and "ready" to start having sex, so he drove H.J. to N.R.'s house to have sex with him.  After H.J. and N.R. had sex, Moore asked her how it felt and if she would give him some.

A couple of weeks later, in late September, while Moore and H.J. were still living at Nadia's house on the Westbank, Moore called H.J. into the room he shared with Nadia and exposed himself.  H.J. left the room but returned when Moore called her back.  Moore told H.J. that he knew she already had sex with N.R., and he pushed H.J. onto the bed.  Moore held her hands above her head as she squirmed to get him off.  Moore then told H.J.: "Come on, you gave him some, why you can't give me none."  Moore then pulled H.J.'s shorts to the side and put the tip of his penis inside of her vagina.  H.J. tried to squeeze her legs closed, fight back, and told Moore to get off of her.  He eventually got up, called her a "buster," and told her to get out.

Over the course of a few months, other incidents occurred, such as when Moore reached under her clothes and put his finger in H.J.'s vagina while they were riding in the car.  On one occasion after they moved back to East Hermes Street in New Orleans East, Moore went into H.J.'s room while she had the lights off and felt her vagina under her clothes.  Another time, Moore put his penis into her anus telling her that her mother could never find out if they had anal sex.  On another occasion, Moore asked H.J. for a hug, and he then reached in her shirt and put his mouth on her breast under her clothes.

Moore told H.J. that if she told anyone what was going on, he would kill himself. H.J. was scared to tell anyone, because she loved Moore like a father and did not want him to kill himself.

After their discussion, J.J. and H.J. returned to the house but did not say anything. Later that evening, J.J. confronted Moore about his actions. Moore tried to console her, but she was distraught. When J.J. awoke later, Moore had taken the guns and left the house. The next day, J.J. found that Moore dropped off the car with his phone in it, so she called the police to report the incidents told to her by H.J.

While interviewing H.J., the police also learned that, while in New Orleans East in January, Moore tried to "mess with" K.W., H.J.'s friend. K.W. had known H.J. and Moore since she was in fourth grade, and she thought of Moore as a father-figure. On one occasion around January of 2013, K.W. walked into the kitchen while Moore was playing with himself. Moore asked K.W. if she saw his penis and if she thought it was big. Moore also asked K.W. what she liked to do sexually and told her not to tell H.J. On another occasion, Moore drove H.J. and K.W. to a party. When they arrived, H.J. exited the vehicle first. While Moore and K.W. were briefly alone, he pulled his penis out and asked her to "ride it." After this, K.W. stopped going to H.J.'s house.

On November 17, 2014, Moore withdrew his former not guilty pleas and entered pleas of guilty to the charges in both Orleans Parish Case Nos. 518766 and 520013.[8] At a December 16, 2014, hearing, the state trial court sentenced Moore in Case No. 518766 concurrently to 10 years in prison for sexual battery without benefit of parole, probation, or suspension of sentence, and 20

---

[8] St. Rec. Vol. 1 of 2, Plea Minutes, 518766, 11/17/14; Plea Form, 518766, 11/17/14; Plea Minutes, 520013, 11/17/14; Plea Form, 520013, 11/17/14.

4

years in prison at hard labor for aggravated incest.[9]  That same day, in Case No. 520013, Moore was sentenced concurrently to seven years in prison for indecent behavior with a juvenile.[10]

Moore's convictions were final under federal law thirty (30) days later, on January 15, 2015, because he did not seek reconsideration of the sentences or move for leave to appeal.  La. Code Crim. P. art. 914;[11] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

One year and seven months later, on August 15, 2016, Moore submitted to the state trial court a single post-conviction claim asserting ineffective assistance of counsel during the plea proceedings in both cases.[12]  On August 24, 2016, the state trial court denied relief under *Strickland v. Washington*, 466 U.S. 668 (1984).[13]  Moore did not seek review of this ruling.

On September 22, 2016, Moore signed and submitted a motion requesting an out-of-time appeal under both case numbers.[14]  No action was taken on the motion which was not presented to the state trial judge by the clerk of that court until September 7, 2018.[15]

---

[9]St. Rec. Vol. 1 of 2, Sentencing Minutes, 518766, 12/16/14.

[10]St. Rec. Vol. 1 of 2, Sentencing Minutes, 520013, 12/16/14.

[11]Louisiana law requires a criminal defendant to move for leave to appeal within 30 days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence.  La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

[12]St. Rec. Vol. 1 of 2, Docket Entry, 8/15/16.

[13]St. Rec. Vol. 1 of 2, Trial Court Judgment (both cases), 8/24/16.

[14]St. Rec. Vol. 2 of 2, Motion for Out-of-Time Appeal (both cases), 9/23/16 (dated 9/22/16); Docket Entry, 9/23/16.

[15]*See* St. Rec. Vol. 1 of 2, Clerk's Letter to Louisiana Supreme Court Central Staff, 9/7/18.

In May of 2017, Moore submitted a motion to quash the bill of information in Case No. 518766.[16] The state trial court denied the motion on July 7, 2017, as meritless.[17] On August 17, 2017, the Louisiana Fourth Circuit denied Moore's related writ application finding no error in the state trial court's ruling.[18] The Louisiana Supreme Court denied Moore's subsequent writ application on November 5, 2018, finding the claims untimely under La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[19]

On May 22, 2018, Moore signed and submitted to the state trial court a motion seeking to enforce the sentencing agreement as to his good-time eligibility.[20] On June 25, 2018, the state trial court denied relief as meritless.[21] On August 8, 2018, the Louisiana Fourth Circuit denied Moore's related writ application finding his claims untimely and unsubstantiated.[22] On May 6, 2019, the Louisiana Supreme Court also denied Moore's writ application noting that Moore had already exhausted his right to state collateral review.[23]

## II.  **Federal Petition**

On January 9, 2019, after correction of certain deficiencies, the clerk of this Court filed Moore's federal petition for habeas corpus relief in which, broadly construed, he asserts the

---

[16]St. Rec. Vol. 2 of 2, Motion to Quash, 518766, 6/9/17.

[17]St. Rec. Vol. 2 of 2, Trial Court Judgment, 518766, 7/7/17.

[18]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2017-K-0653, 8/17/17; 4th Cir. Writ Application, 2017-K-0653, 8/4/17 (dated 7/27/17).

[19]*State ex rel. Moore v. State*, 255 So.3d 1040 (La. 2018); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2017-KH-1581, 11/5/18; La. S. Ct. Writ Application, 17-KH-1581, 9/21/17 (dated 9/12/17).

[20]St. Rec. Vol. 1 of 2, Motion to Enforce Sentencing Agreement (both cases), 5/25/18 (dated 5/22/18).

[21]St. Rec. Vol. 2 of 2, Trial Court Judgment (both cases), 6/25/18.

[22]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2018-K-0644, 8/8/18; 4th Cir. Writ Application, 2018-K-0644, 7/31/18.

[23]*State v. Moore*, 270 So.3d 580 (La. 2019); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2018-KH-1443, 5/6/19; La. S. Ct. Writ Application, 18-KH-1443, 8/27/18 (dated 8/20/18).

6

following grounds for relief:[24] (1) he received ineffective assistance of counsel when his counsel failed to investigate or put the State's case to a meaningful test resulting in the withholding of *Brady* information about H.J.'s sexually transmitted disease before he decided to plead guilty; and (2) the state courts summarily dismissed his state post-conviction motions without providing him with necessary documents to prove his claims.

The State filed a response in opposition asserting that Moore's petition was not timely filed, and Moore has proven no exception.[25]

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to Moore's petition, which is deemed filed in this Court under the mailbox rule on December 6, 2018.[27] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court

---

[24]Rec. Doc. No. 4.

[25]Rec. Doc. No. 16.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court initially filed Moore's deficient petition on January 12, 2019, when it was received. Moore's signature on the form petition is dated December 6, 2019. This is the earliest date appearing in the record on which Moore could have handed his pleadings to prison officials for mailing to a court.

remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Moore's federal petition was not timely filed under the AEDPA and that no exception applies to excuse the untimeliness. For the following reasons, Moore's federal habeas petition was not timely filed and must be dismissed with prejudice for that reason.

## IV. Statute of Limitations

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[28] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Moore's convictions were final under federal law on January 15, 2015, which was 30 days after he was sentenced following his guilty pleas. Pursuant to § 2244, Moore had one year from that date, or until January 15, 2016, to timely file a federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Moore's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

---

[28]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

### A.     <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir.

9

2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In addition, requests for document and transcript copies, like those occasionally made by Moore, are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *1 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La.2000), *aff'd*, 239 F.3d 365 (5th Cir.2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-0115G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (stating that the petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (finding delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In Moore's case, the AEDPA filing period began to run on January 16, 2015, the day after his convictions and sentences were final under federal law. The one-year AEDPA filing period continued to run uninterrupted from that date for one year, until January 15, 2015, when it expired. Moore had no properly filed state post-conviction or other collateral review pending in any court during that period. His next such filing was made on August 15, 2016, which was almost one year and seven months after the deadline expired, when he submitted his first state court application for post-conviction relief. This filing made after the expiration of the AEDPA one-year filing period

does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015).

For these reasons, Moore's federal petition deemed filed under the mailbox rule on December 6, 2018, was filed almost 19 months after the AEDPA filing period expired on January 15, 2016. Moore's federal petition was not timely filed and should be dismissed with prejudice for that reason.

### B.     No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Moore has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.

Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner

suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). Moore has made no such showing in this case, and he is not entitled to equitable tolling of the one-year AEDPA limitations period.

  **C.**   **<u>No Other Excuse or Exception to Time Bar</u>**

Moore has asserted no other valid excuse or exception to avoid the expiration of the one-year AEDPA limitations period in this case, and his petition must be dismissed as untimely.

    **1.**   **<u>No Actual Innocence under *McQuiggin*</u>**

The Supreme Court has recognized that a credible showing of actual innocence may act as a gateway to overcome a procedurally defaulted or untimely filed federal habeas claim. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). To establish actual innocence, a petitioner "must show that it is more likely than not that no reasonable juror would have found him guilty beyond

a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). However, Moore has <u>not</u> asserted his actual, factual innocence of the crime or brought new, reliable evidence to meet the high burden set forth in *McQuiggin*.

To do so, *McQuiggin* requires proof of "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324. No such claim or level of proof has been offered by Moore to this Court, nor has any such claim been established in the state courts. The Court is not swayed by Moore's mere reference to allegedly withheld *Brady* evidence related to his assertion that the victim had a sexually transmitted disease that he did not have. Considering the record as a whole, there is no doubt that these arguments are neither new nor reliable. Moore knew and urged these same arguments in his Jefferson Parish trial (with the same victim) that was held long before his guilty pleas in Orleans Parish. His arguments were not persuasive and did not prevent the jury in that case from convicting him. In this case, he likewise would have a monumental task of meeting the fundamental premise in *Schlup* of proving that <u>no</u> juror would find him guilty had this evidence been presented. *See also*, *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'").

Furthermore, in light of Moore's pleas of guilty, he is remiss in his efforts to attempt now to argue his factual innocence. His pleas of guilty served as a confession and relieved the State of its burden of having to present evidence to support the charges. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine

13

punishment."). For these reasons, the Court does not find that an actual innocence exception applies in this case to excuse Moore's untimely filing of his federal petition.

### 2. **No Exception under *Martinez***

Broadly construed, Moore suggests that the ineffective assistance of counsel during his plea proceedings should allow the courts to consider his claims despite his untimely pursuit of post-conviction relief. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, do not provide a basis for review of Moore's untimely filed federal petition.

In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). In this case, however, the bar at issue in this federal court arises from Moore's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report). As already discussed, these cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *See In re Paredes*, 587 F. App'x at 813; *Adams*, 679 F.3d at 322 n.6. Thus, neither *Martinez* nor *Trevino* provide Moore relief from the untimeliness of his federal petition.

Moore's federal petition deemed filed on December 6, 2018, was not timely filed within the one-year AEDPA statute of limitations period.  There is no excuse for or exception applicable to Moore's untimeliness, and the petition should be dismissed with prejudice as time-barred.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Brandon Moore's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 24th day of July, 2019.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[29]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.